No. 17-2444

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

ASHLEY AMARIS OVERBEY; BALTIMORE BREW,

*Plaintiffs-Appellants*,

v.

MAYOR AND CITY COUNCIL OF BALTIMORE; BALTIMORE CITY
POLICE DEPARTMENT,

*Defendants-Appellees*.

Appeal from the United States District Court
for the District of Maryland, at Baltimore,
The Honorable Marvin J. Garbis, Senior U.S. District Judge

# REPLY BRIEF FOR APPELLANTS
# ASHLEY AMARIS OVERBEY AND BALTIMORE BREW

Deborah A. Jeon
Nicholas T. Steiner
American Civil Liberties Union of
Maryland
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211

Daniel W. Wolff
Charles D. Austin
Nkechi Kanu
Tyler O'Connor
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
dwolff@crowell.com
Telephone: (202) 624-2500
Fax: (202) 628-5116

*Counsel for Appellants Ashley
Amaris Overbey; Baltimore Brew*

Dated: July 3, 2018

# TABLE OF CONTENTS

I.   THE CITY'S NON-DISPARAGEMENT POLICY IS FACIALLY INVALID.......................................................3

II.  THE CITY'S NON-DISPARAGEMENT POLICY WAS UNCONSTITUTIONALLY APPLIED TO MS. OVERBEY. ...........................................................6

    A.   Ms. Overbey Did Not Knowingly And Voluntarily Waive Her First Amendment Rights To The Extent The City Claims. .......................................6

        1.   Ms. Overbey's Representation By Counsel Is Not Dispositive Of Whether She Knowingly Waived Her Constitutional Rights. ............................9

        2.   Disparity In Bargaining Power Is Relevant To Whether Ms. Overbey Voluntarily Waived Her First Amendment Rights.......................14

    B.   The City Has Provided No Legitimate Justification For The Non-Disparagement Provision............................................................18

III. THE DISTRICT COURT'S ORDER ERRED IN HOLDING THAT THE BALTIMORE BREW DOES NOT HAVE STANDING TO CHALLENGE THE ORDER. .......................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Holder,*
  673 F.3d 245 (4th Cir. 2011)..................................................................27

*Atl. Leasing & Fin. Inc. v. IPM Tech., Inc.,*
  885 F.2d 188 (4th Cir. 1989)..................................................................14

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988)...............................................................................22

*Brady v. U.S.,*
  397 U.S. 742 (1970)...............................................................................11

*Citizens United v. FEC,*
  558 U.S. 310 (2010)...............................................................................26

*Connick v. Myers,*
  461 U.S. 138 (1983)...............................................................................20

*Coretel Virginia, LLC v. Verizon Virginia, LLC,*
  808 F.3d 978 (4th Cir. 2015)..................................................................18

*Cromer v. Brown,*
  88 F.3d 1315 (4th Cir. 1996)..................................................................20

*Democratic Nat. Comm. v. Republican Nat. Comm.,*
  673 F.3d 192 (3d Cir. 2012) ....................................................................9

*Erie Telecomms. Inc. v. City of Erie,*
  853 F.2d 1084 (3d Cir. 1988) ....................................................8, 10, 11

*Garrison v. Louisiana,*
  379 U.S. 64 (1965).................................................................................20

*Harrods Ltd. v. Sixty Internet Domain Names,*
  302 F.3d 214 (4th Cir. 2002)..................................................................12

*Janus v. AFSCME,*
    No. 16-1466, 2018 WL 3129785 (2018)...............................19

*Lake James Cmty. Volunteer Fire Dept., Inc. v. Burke Cty,*
    148 F.3d 277 (4th Cir. 1998)..............................20

*Leasing Service Corp. v. Crane,*
    804 F.2d 828 (4th Cir. 1986).......................14, 17

*Mills v. Alabama,*
    384 U.S. 214 (1966)....................................20, 21

*New York Times v. Sullivan,*
    376 U.S. 254 (1964) ..................................23

*Pickering v. Bd. of Educ. of Topkea High Sch. Dist. 205,*
    391 U.S. 563 (1968)...............................19

*Sante Fe Independent Sch. Dist. V. Doe,*
    530 U.S. 290 (2000)....................................5

*Savino v. Murray,*
    82 F.3d 593 (4th Cir. 1996)..............................9

*Taylor v. Republic Servs., Inc.,*
    2013 WL 8808090 (E.D. Va. 2013) ..................15

*Town of Newton v. Rumery*
    480 U.S. 386 (1987) ..................................10

## Other Authorities

First Amendment ............................................... *passim*

Federal Rule of Civil Procedure 56(d)...................... 12

Toni Locy, COVERING AMERICA'S COURTS (2013) ..................26

# INTRODUCTION

As a matter of policy, the City of Baltimore ("City") and the Baltimore Police Department[1] ("BPD", collectively "Appellees") purchase the silence of victims settling allegations of police brutality through inclusion of a one-sided non-disparagement provision in their settlement agreements. The policy violates the First Amendment, undermines the public interest in the "unfettered interchange of ideas" on matters of public concern such as policing, and stifles the flow of newsworthy information. In addition to the generally deleterious effects of such arrangements, there exists a fact dispute as to whether Ms. Overbey's silence was even purchased with her knowing, intelligent, and voluntary consent.

The City's brief fails to grapple with these arguments. It elides all discussion of whether the City has a legitimate interest in curtailing criticism of the government. And it does not explain how inclusion of the non-disparagement provision achieves the government's purported interest in reducing the "time and resources" spent on litigation—an

---

[1] Appellants have not dismissed their claims against the Baltimore Police Department, and Appellant is not aware of the basis for footnote 3 of Appellee City of Baltimore's brief.

interest that can and has been achieved without seeking *silence* of the settling plaintiff. The City would also have this Court ignore evidence that Ms. Overbey did not knowingly and voluntarily waive her First Amendment rights, advancing novel theories of evidence to serve its ends. The Court should not indulge the invitation.

The City's brief also misses the mark with respect to the Baltimore's Brew's standing to challenge the City's non-disparagement policy for itself: the City mischaracterizes the Brew's injury as stemming from a contract between other parties, derivative of Ms. Overbey's experience. But the Brew's harm is not based on *Ms. Overbey's* experience or her agreement with the City, as the Brew made patently clear before the district court; it is, rather, based on the direct harm the City's policy causes the Brew by curtailing the Brew's access to newsworthy sources.

For the reasons set forth below and in the opening brief, the Court should reverse the district court's order and hold that the non-disparagement provision violates the First Amendment, or at the very least reverse and remand for further factual development.

# ARGUMENT

## I. THE CITY'S NON-DISPARAGEMENT POLICY IS FACIALLY INVALID.

Trying to dodge the major issue in this case, the City uses a footnote to contest Appellants' facial challenge of the City's non-disparagement policy and practice, arguing that Appellants had only previously contested the non-disparagement provision as applied to Ms. Overbey. Further, the City argues that one cannot facially challenge the constitutionality of a contract provision. Both arguments are the product of the City's self-serving but false narrative about the nature of this case.

Though Appellees insist otherwise, this is not principally a claim for breach of contract. In their Complaint, Answer to the City's Motion for Summary Judgment, and on appeal, Appellants have consistently asserted as their primary claim that the City's *policy* of including non-disparagement provisions in its settlement agreements with victims of police brutality violates the First Amendment. *See*, *e.g.*, JA204 ("The City's habitual use of gag orders violates this fundamental [First Amendment] principle and so should be held unconstitutional."); Appellants' Br. 21. Indeed, the Baltimore Brew's claim can be read

sensibly only as a facial challenge. *E.g.*, JA034. ("Through its pattern and practice of interference with the press' access to facts and information about police misconduct by silencing settling plaintiffs through the inclusion of the gag order in 95 percent of all settlement agreements, the City impedes the ability of the press generally, and Baltimore Brew specifically, to fully carry out the important role the press plays in informing the public about government actions."). In fact, nowhere in the Complaint or in Appellants' opposition to the City's motion to dismiss or for summary judgment filed in the district court does any aspect of the Brew's claim turn on facts related to Ms. Overbey. As counsel told the district court at argument, the Baltimore Brew could have filed its own complaint—its claim is not tied to Ms. Overbey's experience. JA275.

It is true, of course, that Ms. Overbey's Settlement Agreement is an application of the City's policy of including non-disparagement provisions in settlement agreements with victims of police brutality. *See* JA15 ("This lawsuit stems from the City's application of the gag order, which reflects a formal policy of the City . . . ."); JA205 ("The gag order essentially operates as a de facto legal standard."). Thus, as it

relates to Ms. Overbey alone, whether the Court reviews her challenge as a facial or as-applied challenge is not important. Insofar as the City's basis for including the non-disparagement provision in its settlement with Ms. Overbey is presumably the same reason it includes such non-disparagement provisions in 95 percent of its settlement agreements with victims of police brutality, if this Court agrees that the City's rationale for gagging Ms. Overbey does not pass muster under the First Amendment, its rationale presumably would fail in all future cases as well, as a function of this Court's binding precedent.

Purely from a pleadings and preservation of arguments point of view, however, the filings speak for themselves that both Appellants have challenged the non-disparagement policy as a government *policy*, and not merely as a provision at the center of a breach of contract claim. There is no question a government policy can be the subject of a facial challenge. *See, e.g.*, *Sante Fe Independent Sch. Dist. V. Doe*, 530 U.S. 290, 316 (2000) (concluding that Sante Fe Independent School District's policy regarding prayer in school did not survive a facial challenge).

## II.   THE CITY'S NON-DISPARAGEMENT POLICY WAS UNCONSTITUTIONALLY APPLIED TO MS. OVERBEY.

Regardless of its constitutionality generally, the City's non-disparagement policy violated Ms. Overbey's First Amendment rights as it was applied to her by virtue of the Settlement Agreement.  This is so both because she did not knowingly and voluntarily waive her right to speak freely about her mistreatment by the BPD to the extent the City claims she did, and because the policy as applied to her does not further a legitimate government interest.

### A.   Ms. Overbey Did Not Knowingly And Voluntarily Waive Her First Amendment Rights To The Extent The City Claims.

Regarding Ms. Overbey, there are two salient pieces of evidence in this case:  (1) her unrefuted declaration and (2) Ms. Overbey's Settlement Agreement with the City and the three officers accused of misconduct.  They present conflicting stories as to what Ms. Overbey understood when she executed the Settlement Agreement, and just what rights the parties bargained for.

Ms. Overbey's declaration is straightforward and requires reversal of the district court's pre-discovery dismissal.  In it, she makes clear that she did not understand the scope of the rights she was

relinquishing when she executed the Settlement Agreement. Specifically, she did not understand the scope of the Settlement Agreement's non-disparagement provision to be what the City now argues it was. She did not know that the provision silenced only her, while still allowing the City to publicize its narrative. As a result, she did not appreciate that the gag provision prohibited her from responding to statements of third parties disparaging her, prompted as they were by the City's own public comments about her and her case. JA233.

Furthermore, Ms. Overbey explained that she did not personally negotiate the terms of the provision and did not know negotiation was an option. JA233. There is no evidence proffered by the City that Ms. Overbey's attorney negotiated over the non-disparagement provision, and if anything Ms. Overbey was entitled to a reasonable inference that there would have been no settlement without the one-sided gag. *See* JA54 (asserting that the non-disparagement provision is included in approximately 95 percent of the City's settlements with victims of police brutality).

The presumption against waiver should have carried this matter to discovery. *See Erie Telecomms. Inc. v. City of Erie*, 853 F.2d 1084, 1095 (3d Cir. 1988). In contrast to Ms. Overbey's statements, the Settlement Agreement includes two boilerplate provisions: one states that the Settlement Agreement was executed after an opportunity for counsel to make any inquiries it deemed necessary, and another states that the Settlement Agreement was a product of negotiation. These conflict with Ms. Overbey's declaration and should not have been resolved through a speedy dismissal of Ms. Overbey's claim. Long recognized is the principle that "[c]ourts indulge in every reasonable presumption against waiver of fundamental constitutional rights and [are] not to presume acquiescence in the loss of such rights." *Erie Telecomms.*, 853 F.2d at 1095.

The City supplants the conflicting evidence and presumption against waiver with two bright-line rules that ignore the relevant jurisprudence. First is its contention that waiver of a constitutional right is necessarily voluntary if the waiving party was represented by counsel. Second is its claim that unequal bargaining power is not probative of whether a party voluntarily waived its constitutional

rights. The City's proposed rules would render representation by counsel dispositive and unequal bargaining power meaningless in ascertaining whether a waiver was knowing and voluntary. Neither proposal, which would undermine the presumption against waiver, finds support in the law.

### 1. Ms. Overbey's Representation By Counsel Is Not Dispositive Of Whether She Knowingly Waived Her Constitutional Rights.

Waivers of constitutional rights are not easily found and thus are subject to a more exacting standard than the City advances. While representation by counsel is probative of whether a waiver is knowing, *see e.g., Savino v. Murray*, 82 F.3d 593, 603 (4th Cir. 1996), "[d]etermining whether [a] waiver was voluntary, knowing, and intelligent in any particular case rests upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the waiving party." *Democratic Nat. Comm. v. Republican Nat. Comm.*, 673 F.3d 192, 205 (3d Cir. 2012). The Court should reject the City's invitation to find that representation by counsel forecloses any argument against waiver of Ms. Overbey's First Amendment rights.

According to the City, it is immaterial that Ms. Overbey did not understand the language in the non-disparagement provision and that her attorney's advice to her as to what conduct was prohibited was deficient, at least in comparison to the scope of the prohibition advanced by the City in this case. It asserts that a "contract is knowing . . . when the party was represented by counsel" and "the legal standard does not inquire as to a party's actual understanding of contract language." Govt. Br. 22–23. But the courts, including those cited by the City, have considered multiple factors in evaluating whether a waiver was knowingly given. As such, no factor—including representation by counsel—is dispositive.

In *Town of Newton v. Rumery*, the Supreme Court weighed multiple facts, including that the waiving party was a sophisticated businessman, was not in jail, was represented by an experienced lawyer, and considered the agreement for three days before signing it. 480 U.S. 386, 394 (1987). And in *Erie*, the Court enforced a waiver of constitutional rights only after concluding that "the [waiving party] did not contend that it or its counsel was unaware of the significance of the [instrument in which it waived notice.]" *Erie Telecomms.*, 853 F.2d at

1095. If representation by counsel was dispositive, the Courts' analyses in both cases would have been superfluous.

More to the point, the City's proposal would render meaningless the Supreme Court's instruction that "waivers of constitutional rights not only must be voluntary, but must also be knowing, intelligent acts done *with sufficient awareness of the relevant circumstances and likely consequences*." *Brady v. U.S.*, 397 U.S. 742, 748 (1970) (emphasis added). Ms. Overbey's declaration disputes that she had any such awareness. While she knew the Settlement Agreement included a waiver of some form, she did not understand the actual scope of the waiver to be what the City expected and now advances. She understood the non-disparagement provision as applicable to speaking to journalists; she was not aware that the provision prohibited her from discussing her case in any public forum, especially after the City, through its employees, publicly presented its own competing version of the police misconduct following the settlement, which in turn prompted third parties to make publicly disparaging remarks about her. Unlike, for instance, the party waiving its right in *Erie*, Ms. Overbey is not a sophisticated counterparty with experience negotiating and reading

contract language. Further, it appears her attorney may not have informed her correctly as to what conduct was prohibited by the non-disparagement clause. JA027, 201, 233. The district court erred by failing to credit this uncontested evidence that she and her "counsel w[ere] unaware of the significance of the" non-disparagement provision. JA360.

In opposing additional discovery, the City argues Appellants should have alerted the district court to the need for discovery under Federal Rule of Civil Procedure 56(d). Govt. Br. 25. The City is confusing its rules. Rule 56(d) comes into play where the responding party has not had sufficient time to develop its opposition to summary judgment. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (filing under Rule 56(d) is necessary where a party "has not had the opportunity to discover information that is essential to his opposition"). That practice is inapplicable here. Ms. Overbey's declaration on its own gives rise to genuine issues of material fact. Typically, that would cause the district court to deny the motion and schedule the case for trial. But given that the City filed its motion prior to discovery, the point raised below by counsel (cited by the City)

is that the district court should have denied the motion and permitted discovery to commence in the normal course.

Furthermore, the idea that Appellants intended to take discovery was not sprung on Appellees or the district court for the first time at the motions argument, as the City contends. Govt. Br. 25. In opposing summary judgment, Appellants stated plainly that "[w]hether Ms. Overbey in fact 'knowingly' and 'voluntarily' waived her rights is a question of fact that cannot be resolved at this stage of the case." JA207. The genuine dispute regarding the waiver issue, as well as whether the non-disparagement provision was subject to negotiation, made discovery on these issues not only beneficial but appropriate.[2] Similarly, in opposing the BPD's separate motion to dismiss, Appellants stated that "[d]iscovery may demonstrate" whether the BPD had any responsibility for the non-disparagement policy. JA228. While the rules permit parties to move early for dismissal or for summary

_____

[2] Appellees oddly suggest that Appellants desire to depose their own client. Govt. Br. 25-26. Not so. The suggestion below at oral argument was merely that nobody had yet been deposed because discovery had not commenced, and that if the City questions Ms. Overbey's declaration, it is free to depose her. JA283. If this matter is remanded for discovery and Appellees have no desire to depose Ms. Overbey, that is of course their prerogative.

judgment, moving parties do so knowing that unresolved questions of material fact may make early dismissal inappropriate. Such is the case here.

### 2. Disparity In Bargaining Power Is Relevant To Whether Ms. Overbey Voluntarily Waived Her First Amendment Rights.

The second bright-line rule proposed by the City is that unequal bargaining power, as a matter of law, is not relevant in ascertaining whether a waiver of constitutional rights is voluntary. But this Court has long considered unequal bargaining power as probative of whether a party has knowingly waived their constitutional rights. *See Atl. Leasing & Fin. Inc. v. IPM Tech., Inc.*, 885 F.2d 188, 192 (4th Cir. 1989) (quoting *D.H. Overmyer* and examining the record for "evidence of gross disparity in bargaining position"); *Leasing Service Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) (evaluating the respective bargaining power of two parties in deciding whether a party waived its constitutional right to trial by jury). Appellees' position ignores more than 30 years of Fourth Circuit precedent.

In light of the Court's jurisprudence, it is significant that the City fails to dispute the unequal nature of the bargaining power between it

and Ms. Overbey.  Instead, the City argues that Ms. Overbey's waiver of her First Amendment rights is just "how settlement works."  Govt. Br. 31.  But this line of argument exposes what the City has ignored from day one: the government is not a private party; it does not stand in the same position as the employers or large companies cited in the City's brief—entities to which the First Amendment does not apply.  *See* Govt. Br. 32.  Unlike non-disparagement provisions in private settlements, the question here is what the *government* can demand as a condition of settlement, and whether it can use its superior bargaining power to extract a waiver of First Amendment rights that is not reasonably related to the purpose of the Settlement Agreement itself.  *See* JA016 (the purpose of the Settlement Agreement is to "avoid the cost, time, expense and uncertainties of protracted litigation").

The unequal bargaining power between the City and its victims is manifest both in the fact that the City manages to include the non-disparagement provision in 95 percent of its settlement agreements, and in the nature of the provision itself, which prevents victims like Ms. Overbey from criticizing the City and commenting on the facts of her case but provides her and other victims with no countervailing

protections against disparagement. *See Taylor v. Republic Servs., Inc.*, 2013 WL 8808090, at *3 (E.D. Va. 2013) (evaluating whether a jury waiver provision was "one-sided" and evidence of whether the Plaintiff "possess[ed] sufficient education and experience to enter into [an] Agreement."). The one-sided nature of the non-disparagement provision facilitates this very dispute. The City Solicitor—a powerful city official—openly disparaged Ms. Overbey in published comments, referring to her as "hostile" to the police; his comments in turn induced other citizens to direct vituperative public comments at her. Her defense to these private attacks spurred by the City's public statements created the alleged violation at the heart of this matter.

Not contesting the unequal bargaining power between the parties, the City suggests that considering bargaining power as relevant to the waiver issue would "call into question huge portions of established criminal procedure." Govt. Br. 32. This position—merging criminal and civil rules—would undermine the courts' ability to assess fully the circumstances of any alleged waiver. Further, and more fundamentally, it conflicts with Fourth Circuit law, which in the civil context has long considered the bargaining power of parties in determining whether to

enforce contractual waivers of constitutional rights. *See, e.g., Leasing Service Corp.*, 804 F.2d at 833 (1986). No authority suggests that such a consideration necessarily undermines routine criminal matters and procedure.

Furthermore, procedural safeguards in criminal procedure remain in place to facilitate waivers where appropriate and prudent. For example, the colloquy with the trial court in a plea proceeding ensures knowing and voluntary waivers even where bargaining power of the parties is grossly uneven. No analogous procedural safeguards exist in the civil context to ensure that waivers are knowing and voluntary. This case proves the point: the district court, ruling on a motion to dismiss or alternative motion for summary judgment, failed to give Ms. Overbey the benefit of reasonable inferences, instead ruling for the City—based only on the four corners of the Settlement Agreement— that Ms. Overbey's waiver was knowing and voluntary. The City thus greatly overstates how the full assessment requested here would collapse criminal procedure.

## B.    The City Provides No Legitimate Justification For The Non-Disparagement Provision.

Appellants opening brief addressed the City's twin rationalizations for its non-disparagement policy: avoiding public criticism and obtaining "closure."  The former is illegitimate insofar as the government does not have an interest in suppressing criticism and the latter objective is not furthered by enforcement of the non-disparagement provision itself.

The City responds with several arguments, one of which it raises for the first time on appeal.[3]  First, it asserts without elaboration or citation to record evidence that silencing victims of police misconduct does not undermine effective policing because there exist other procedures, which if implemented, might keep the police department accountable for its actions.  Second, the City asserts, for the first time, that the true purpose of the non-disparagement provision, in addition to "reducing the time and resources spent on litigation" is to "clear[] the

---

[3] Arguments not raised before the district court are waived on appeal. *See Coretel Virginia, LLC v. Verizon Virginia, LLC*, 808 F.3d 978, 988 (4th Cir. 2015) (to preserve an argument on appeal a party must have raised it "in a manner sufficient to alert the district court to the specific reason the party seeks relief." (citation and internal quotation marks omitted)). .

name[s]" of the police officers who abused Ms. Overbey and to shield them from "the harmful publicity, stress, and uncertainty of litigation." Govt. Br. 34. The City then contends, again without reference to any evidence in the record, that the public interest favors enforcement of the non-disparagement provision because the City will compensate future victims of police brutality less if the City isn't able to negotiate for those victim's silence. Appellants address each argument in turn.

The City, with little more than a rote citation to the district court's order, disputes the public interest in the "post settlement" airing of grievances about police brutality because "other procedures . . . exist to hold BPD accountable for its actions." Govt. Br. 34. It is well established that "free and open debate" on the provision of municipal services "is a matter of legitimate public concern" that is "vital to informed decision-making by the electorate." *Pickering v. Bd. of Educ. of Topkea High Sch. Dist. 205*, 391 U.S. 563, 571–72 (1968).[4] This circuit has held that the public has an interest in the effective provision of first

---

[4] *See also Janus v. AFSCME*, No. 16-1466, 2018 WL 3129785 at *9 (2018) ("Whenever the Federal Government or a State prevents individuals from saying what they think on important matters or compels them to voice ideas with which they disagree, it undermines" our "democratic form of government" and "the search for truth.").

responder services, *see Lake James Cmty. Volunteer Fire Dept., Inc. v. Burke Cty*, 148 F.3d 277, 281 (4th Cir. 1998), and it has specifically opined that public discourse about racial grievances in policing (which the DOJ Report shows is correlated with police brutality) is a matter of public concern.  *See Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996).  "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government," *Garrison v. Louisiana,* 379 U.S. 64, 74–75 (1965), and as Justice Brennan described, "[u]nconstrained discussion concerning the manner in which the government performs its duties is an essential element of the public discourse necessary to informed self-government."  *Connick v. Myers*, 461 U.S. 138, 161 (1983) (Brennan, J, dissenting).

By preventing victims of police brutality from contributing their experiences to the public discourse (or, in Ms. Overbey's case, punishing the victim for doing so), the City not only impinges on the rights of the victims, but also the rights of Baltimoreans to make informed decisions about policing in their community.  Nothing in the case law, so far as Appellants can tell, holds that the public's interest in "the manner in which government is operated or should be operated," *see Mills v.*

*Alabama*, 384 U.S. 214, 218 (1966), dissipates "post-settlement."  In the United States, we *presume* there is a public interest in discourse regarding government affairs; the City of Baltimore provides no explanation for turning this presumption on its head once a party has settled a civil suit.

Nor is there any case law to suggest that public debate about matters of public concern, such as police brutality, is any less important if "other procedures . . . exist to hold BPD accountable for its actions." Govt. Br. 34.  The only evidence in the record indicates that additional transparency is exactly the antiseptic Baltimore needs to counteract its police department's culture of secrecy, lack of accountability, and civil rights abuses.  The DOJ Report describes how the BPD's misconduct, including its brutalization of its own residents, results from the fact that "BPD's accountability system is shielded almost entirely from public view, and the civilian oversight mechanisms that are currently in place are inadequate and ineffective."  JA213 (quoting DOJ Report at 147).  That the City of Baltimore recently signed a consent decree to reform its policing activities only amplifies Ms. Overbey's assertion that the police department's lack of accountability is, in fact, a matter of

public concern worthy of open and unencumbered public debate. The public has an interest in knowing whether those measures are effective, and in hearing the experiences of future victims.

The City's other arguments are equally without merit. No argument explains how enforcing the one-sided non-disparagement clause "reduc[es] time and resources spent on litigation." Govt. Br. 34. If the non-disparagement provision is stricken, the Settlement Agreement's severability clause dictates that the rest of the Settlement Agreement would remain in full force and effect. *See* JA98. No more "time and resources" would be spent by the City or the settling police officers re-litigating Ms. Overbey's unlawful arrest claims.

The City also claims that the police officers who signed the Settlement Agreement with Ms. Overbey "had a weighty interest in clearing their names and in ending the harmful publicity." Govt. Br. 34. This defense was not offered below and should be rejected as a convenient litigating position. *Cf. Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213 <u>(1988)</u> (no deference to agency interpretations of policies where the proffered interpretation is nothing more than a convenient litigating position). In any event, nothing in the Settlement

Agreement, including the non-disparagement provision, "clear[ed] the officers names." Paragraph 8 states that the Settlement Agreement is not to be construed as an admission of liability. It is not a concession that the officers are not liable. The City is thus asserting that the court should enforce the non-disparagement provision in order to protect a "right" that appears nowhere in the Settlement Agreement itself.

Furthermore, that the police officers want to limit negative publicity and reduce "stress" does not militate in favor of enforcing the non-disparaging provision for two reasons: (1) the non-disparagement clause still prevents Ms. Overbey from criticizing the City, which was also a party to the Settlement Agreement; and (2) the police officers have no right to be free from reproach for services performed in their public capacity.

The famous case cited by the City, *New York Times v. Sullivan*, actually stands for the principle "that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. 254, 270 (1964). Ms. Overbey sued the three settling officers in their official capacities for

actions taken as officers of the law. If the officers considered Ms. Overbey's allegations defamatory, then they, like the Commissioner of the City of Montgomery, Alabama in *Sullivan*, can bring a defamation case against her. But prohibiting reprobation of the government or its officials for acts carried out on behalf of the state is not a legitimate government interest, regardless of whether that public reproach induces "stress." It is just governmental bullying and suppression of speech in the guise of "contract."

Lastly, the City contends that it will compensate future victims of police brutality less if the City is unable to also purchase their silence. The most obvious hope is that there will be fewer victims to compensate if the police department is held publically accountable for its actions. Surely that would further the public interest. But it is also worth noting that the City cites nothing for its assumption that the value of settlement agreements will decrease. It is pure speculation. And even if the City's guess were true, this raises a question of damages, *i.e.*, how much victims will be compensated, and not a question of whether the City's policy of prohibiting speech on a subject of public concern is in the public interest.

## III. THE DISTRICT COURT'S ORDER ERRED IN HOLDING THAT THE BALTIMORE BREW DOES NOT HAVE STANDING TO CHALLENGE THE ORDER.

The City errs in construing the Baltimore Brew's injury as based on the terms of private contracts to which it was not a party, and by arguing that the Brew seeks to assert the free speech rights of third parties. As discussed above, this case is about governmental action and the constitutional limits on what government can, as a matter of policy, demand as a condition of settlement with citizens legally challenging its official misconduct. Although a private party may insist on silence in a private dispute, the government is accountable to the public and as such cannot attempt to shield its inner workings by gagging victims of police brutality, even when the gag is dressed up as the product of a negotiated settlement agreement.

The City's mischaracterization of this dispute notwithstanding, the Brew's complaint does not relate to Ms. Overbey's experience specifically, but with the City's pattern and practice of demanding and securing non-disparagement clauses in nearly all settlements for cases involving police misconduct. The non-disparagement policy impinges on Baltimore Brew's own First Amendment right to seek out news of public

importance by gagging the best sources of that news. Access to publicly available documents, including BOE agendas, City official memoranda, and civil complaints is of no consequence. A restriction on protected speech violates the First Amendment even if it does not completely, or even significantly, curtail the message. *See Citizens United v. FEC*, 558 U.S. 310, 356 (2010) ("When Government seeks to use its full power . . . to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought. This is unlawful. The First Amendment confirms the freedom to think for ourselves."). Additionally, "without human sources to interpret and fill in the gaps often left in documents, reporters cannot provide the public with the information it needs to decide how it wants its government to act." Toni Locy, COVERING AMERICA'S COURTS 84 (2013). Last, although the Brew may have had the ability to speak to Ms. Overbey ***before*** she entered into her settlement agreements, the Brew's ability to report on the settlement itself—which is unquestionably central to the Brew's mission to report on government accountability—is clearly impaired by the City's policy.

The Baltimore Brew also has standing to bring its action because the "non-disparagement" clause prevents the Brew from gathering the news by speaking to sources that are otherwise willing to speak to them. This Court has recognized that the First Amendment protects news organizations' right to receive protected speech through the "willing speaker" doctrine. *See ACLU v. Holder,* 673 F.3d 245, 255 (4th Cir. 2011). "The "willing speakers" here are individuals who want to share details of their police misconduct claims, and would do so but for the City's policy of imposing a gag order on any police misconduct complainant who settles their legal claims with the City. *See* JA032 (Complaint alleging the Brew was unable to interview victims because of the non-disparagement agreements with the City).

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court reverse the district court. This Court should hold (1) that the City's non-disparagement policy is unconstitutional on its face or, alternatively, as applied to Ms. Overbey in this particular case, and (2) that the Brew has standing to challenge the City's policy, and remand

the matter to the district court for further proceedings consistent with its holding.

Dated:  July 3, 2018                    Respectfully submitted,

                                          /s/      Daniel Wolff
                                        Daniel W. Wolff
                                        Charles D. Austin
                                        Nkechi Kanu
                                        Tyler O'Connor
                                        CROWELL & MORING LLP
                                        1001 Pennsylvania Avenue, N.W.
                                        Washington, D.C.  20004
                                        Telephone: (202) 624-2500
                                        Facsimile:   (202) 628-5116
                                        dwolff@crowell.com

                                        Deborah A. Jeon
                                        Nicholas T. Steiner
                                        American Civil Liberties Union of Maryland
                                        3600 Clipper Mill Road, Suite 350
                                        Baltimore, MD  21211

                                        *Counsel for Appellants Ashley Amaris Overbey; Baltimore Brew*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,282 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point Century Schoolbook.

/s/ Daniel W. Wolff
Daniel W. Wolff

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2018, an electronic copy of the foregoing brief was filed with the Clerk for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished upon the following counsel via the CM/ECF system.

Jason Robert Foltin
Assistant Solicitor
Baltimore City Law Department
100 North Holliday Street
Baltimore, MD 21202
Jason.foltin@baltimorecity.gov

Lydie Essama Glynn
Assistant Solicitor
Baltimore City Law Department
100 North Holliday Street
Baltimore, MD 21202
Lydie.glynn@baltimorecity.gov

Frederic Nelson Smalkin, Jr.
Assistant Solicitor
Baltimore City Law Department
100 North Holliday Street
Baltimore, MD 21202
Fred.smalkin@baltimorecity.gov

Colin Patrick Glynn
Baltimore City Law Department
100 North Holliday Street
Baltimore, MD 21202
Colin.glynn@baltimorepolice.org

/s/ Daniel W. Wolff
Daniel W. Wolff